1  **WO**

2

3

4

5

6               IN THE UNITED STATES DISTRICT COURT

7               FOR THE DISTRICT OF ARIZONA

8  United States of America,          )
                                       )
9            Plaintiff,                )
                                       )    No. CR 18-1684-TUC-CKJ (BGM)
10  vs.                                )
                                       )    **ORDER**
11  Donald Hugh Nichols,               )
                                       )
12           Defendant.                )
   _____)

13
        On July 23, 2020, Magistrate Judge Bruce G. Macdonald issued a Report and
14
   Recommendation ("R&R") (Doc. 114) in which he recommends that the Motion to Dismiss
15
   Count 10 for Lack of Federal Jurisdiction (Doc. 70), the Motion to Dismiss Count 10 – Void
16
   for Vagueness (Doc. 71), and the Motion to Dismiss Count 10 of the Indictment for Failure
17
   to State an Offense (Doc. 72) filed by Defendant Donald Hugh Nichols ("Nichols") be
18
   denied.  Nichols has filed an objection (Doc. 116) and the government has filed a response
19
   (Doc. 119).
20
        The  standard  of  review  that  is  applied  to  a  magistrate  judge's  report  and
21
   recommendation is dependent upon whether a party files objections – the Court need not
22
   review portions of a report to which a party does not object. *Thomas v. Arn*, 474 U.S. 140,
23
   150, 106 S. Ct. 466, 472-73, 88 L.Ed.2d 435 (1985).  However, the Court  must "determine
24
   de novo any part of the magistrate judge's disposition that has been properly objected to.
25
   The district judge may accept, reject, or modify the recommended disposition; receive further
26
   evidence; or return the matter to the magistrate judge with instruction." Fed. R. Civ. P.
27
   72(b)(3); *see also* 288 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo
28

1    determination of those portions of the report or specified proposed findings or

2    recommendations to which objection is made.").

3

4    *Report and Recommendation – Factual Background*

5         The Court adopts the factual background of the R&R, to which there were no

6    objections.

7

8    *Motion to Dismiss Count 10 for Lack of Federal Jurisdiction* (Doc. 70)

9         Nichols argues the focus of the magistrate judge on the facts to determine the Marana

10   Stockyards transactions were interstate in nature misapplies the principle that, generally, a

11   motion to dismiss should not be used to pre-try the adequacy of a government's facially

12   sufficient indictment. *Costello v. United States*, 350 U.S. 359, 363 (1956).  However, "under

13   18 U.S.C. § 3231, federal district courts have exclusive original jurisdiction over 'all offenses

14   against the laws of the United States.'"  *United States v. Marks*, 530 F.3d 799, 810 (9th Cir.

15   2008), *quoting* 18 U.S.C. § 3231.

16        In fact,

17        Subject-matter jurisdiction in every federal criminal prosecution comes from 18
          U.S.C. § 3231, and there can be no doubt that Article III permits Congress to assign
18        federal criminal prosecutions to federal courts.  *That's the beginning and the end of
          the "jurisdictional" inquiry.*  Lawyers and judges sometimes refer to the
19        interstate-commerce element that appears in many federal crimes as the "jurisdictional
          element," but this is a colloquialism – or perhaps a demonstration that the word
20        "jurisdiction" has so many different uses that confusion ensues.  *Kanar v. United
          States*, 118 F.3d 527, 529-30 (7th Cir.1997).

21
          A link to interstate commerce may be essential to Congress's substantive authority,
22        *see United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995),
          but the existence of regulatory power differs from the subject-matter jurisdiction of
23        the courts.  *United States v. Martin*, 147 F.3d 529 (7th Cir.1998), clarifies this point
          by holding that *proof of an interstate transaction is no different from proof of any
24        other element of a federal crime*.  "[T]he nexus with interstate commerce, which
          courts frequently call the 'jurisdictional element,' is simply one of the essential
25        elements of [the offense].   Although courts frequently call it the 'jurisdictional
          element' of the statute, it is 'jurisdictional' only in the shorthand sense that without
26        that nexus, there can be no federal crime . . . It is not jurisdictional in the sense that
          it affects a court's subject matter jurisdiction, i.e., a court's constitutional or statutory
27        power to adjudicate a case, here authorized by 18 U.S.C. § 3231."  147 F.3d at 531-32
          (citations omitted).  *Martin* adds that, ". . . *even if the government fails to establish the
28        connection to interstate commerce, the district court is not deprived of jurisdiction to*

*hear the case*." 147 F.3d at 532.  *See also, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 118 S.Ct. 1003, 1009-12, 140 L.Ed.2d 210 (1998).

*Hugi v. United States*, 164 F.3d 378, 380–81 (7th Cir. 1999), *emphasis added*; *see also United States v. Ratigan*, 351 F.3d 957, 963 (9th Cir. 2003), *citing Hugi with approval*.

In other words, the magistrate's judge's analysis and determination that the plain language of 18 U.S.C. § 667 supports federal jurisdiction is correct.  This objection is overruled.

*Motion to Dismiss Count 10 – Void for Vagueness* (Doc. 71)

Nichols argues that the magistrate judge failed to meaningfully analyze whether "marketing," as it is used in 18 U.S.C. § 667, Theft of Livestock, is ambiguous.  Rather, Nichols asserts the magistrate judge selected "one of the many definitions of marketing and holds it up as the only, unambiguous definition that would fit the statute."  Objection, p. 2.  Nichols requests the statute be declared void or, in the alternative, the rule of lenity be applied.

When the plain language of a statute is reasonably clear, courts enforce that plain language unless it leads to unreasonable or impracticable results.  *Caminetti v. United States*, 242 U.S. 470, 485 (1917) ("Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion."); *Animal Legal Def. Fund v. United States Dep't of Agric.*, 933 F.3d 1088 (9th Cir. 2019) ("If the language has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there."), *quotation marks and citation omitted*; *United States v. Gallegos*, 613 F.3d 1211, 1214 (9th Cir. 2010) ("If the plain language of a statute renders its meaning reasonably clear, we will not investigate further unless its application leads to unreasonable or impracticable results."), *alterations, quotation marks, and citations omitted*.

When statutory language is ambiguous, however, courts look to canons of construction, legislative history, the statute's overall purpose, the historical context, and the

- 3 -

1    specific sequence of events leading to the passage of the statute to discern Congress's intent.

2    *See Edwards v. Aguillard*, 482 U.S. 578, 595 (1987); *Moran v. Screening Pros, LLC*, 923

3    F.3d 1208, 1215 (9th Cir. 2019); *Gallegos*, 613 F.3d at 1214; BNSF *Ry. Co. v. Cal. Dep't of*

4    *Tax & Fee Admin.*, 904 F.3d 755, 764 (9th Cir. 2018) ("Where the plain language of a

5    provision is open to more than one interpretation, we may look to legislative history to clarify

6    its meaning"); *United States v. Nader*, 542 F.3d 713, 717 (9th Cir. 2008) ("If the terms are

7    ambiguous, we may look to other sources to determine congressional intent, such as the

8    canons of construction or the statute's legislative history.").

9         "A statute is ambiguous if it is susceptible to more than one reasonable interpretation."

10   *Ariz. v. Tohono O'odham Nation*, 818 F.3d 549, 556 (9th Cir. 2016), *quotation marks and*

11   *citation omitted*.  Nichols argues the statute is ambiguous because "marketing" does not give

12   reasonable warning as to what conduct is proscribed:

13        On its face, the statu[t]e could be construed to apply to the embezzlement of funds
          from an advertising firm attempting to market, or advertise, Angus beef throughout
14        the Midwest. Or it could apply to the theft of books from a for-profit national
          university's business school who focused their area of study on the nationwide
15        discipline of the interstate sale of sheep. Or it could be construed to apply to theft
          occurring during the cross-border physical sale of goats between private parties. But
16        it cannot be applied to all of these examples at once, using consistent definitions of
          what marketing means.
17
     Motion to Dismiss Count 10 – Void for Vagueness, pp. 4-5.
18
          In discussing the term "marketing" as used in the Plant Variety Protection Act of
19
20   1970, 7 U.S.C. § 2321 *et seq.*, the Supreme Court stated that "[m]arketing ordinarily refers

21   to the act of holding forth property for sale, together with the activities preparatory thereto[.]"

22   *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187–88 (1995).  While promotional activities

23   are not required, such conduct may be included within "marketing."  *Id.*  Further, as pointed

24   out by Nichols, "marketing" is defined in different ways.

25        However, the different definitions of "marketing" do not necessarily make the statute

26   ambiguous or void.  For example, the Supreme Court has recognized that the term "carry"

27   has both  primary and special meanings.  *Muscarello v. United States*, 524 U.S. 125, 128

28   (1998).  A review of the variety of definitions as summarized in Nichols' Motion to Dismiss

Count 10 – Void for Vagueness indicates the primary definition of "marketing" is, as stated by the magistrate judge, "the act or process of selling or purchasing in a market[.]"  R&R, p. 10, *citing* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/ (last visited June 26, 2020).  Indeed, as pointed out by Nichols, it is the *third* definition within Black's Law Dictionary that defines "marketing" as the promotion of goods.  Using the primary definition of "marketing," the statute is unambiguous.  *See Miranda v. Anchondo*, 684 F.3d 844, 849 (9th Cir. 2012) (stating that "statutory interpretation begins with the statutory text. If the statutory language is unambiguous and the statutory scheme is coherent and consistent, judicial inquiry must cease."), *alterations, quotation marks, and citation omitted*.  While "if you look at a statute long enough and hard enough, even the clearest language can appear to become ambiguous[,]" *United States v. LeCoe*, 936 F.2d 398, 405 (9th Cir. 1991), J. Tang, dissenting, "[a] reasonable person would have no difficulty recognizing what conduct [§ 667] prohibits."  *Chhun*, 744 F.3d at 1117.

Moreover, even if the Court found the term to be ambiguous, the application of the rule of lenity, as requested by Nichols, is not appropriate.  "[T]he rule of lenity . . . applies only when, after consulting traditional canons of statutory construction, we are left with an ambiguous statute." *United States v. Shabani*, 513 U.S. 10, 17 (1994).  For example, the title of a statute may shed "light on some ambiguous word or phrase[.]" *Carter v. United States*, 530 U.S. 255, 267 (2000), *citation omitted*.  Nichols argues that the statute could proscribe:

> the embezzlement of funds from an advertising firm attempting to market, or advertise, Angus beef throughout the Midwest.  Or it could apply to the theft of books from a for profit national university's business school who focused their area of study on the nationwide discipline of the interstate sale of sheep.

 Motion to Dismiss Count 10 – Void for Vagueness, pp. 3-4.  The title of the statute in this case makes clear it proscribes the theft of livestock as opposed to obscure scenarios as envisioned by the defense.  In light of this construction, it cannot be said that the Court "can make no more than a guess as to what the statute means. *Shular v. United States*, 140 S. Ct. 779, 789, 206 L. Ed. 2d 81 (2020), Kavanaugh, J., concurring; *see also Abramski v. United States*, 573 U.S. 169, 188, n. 10 (2014) (the rule of lenity "applies only if, 'after considering

1   text, structure, history and purpose, there remains a grievous ambiguity or uncertainty in the

2   statute such that the Court must simply guess as to what Congress intended'"), *citation*

3   *omitted*; *United States v. Shabani*, 513 U.S. 10, 17 (1994) ( rule of lenity applies only when,

4   after consulting traditional canons of statutory construction, the court is left with an

5   ambiguous statute).  The Court finds the statute is not ambiguous or vague; the Court

6   overrules this objection.

7

8   *Motion to Dismiss Count 10 of the Indictment for Failure to State an Offense* (Doc. 72)

9           Nichols argues that, because he is charged with both wire frauds and theft from the

10   same time period, the conduct charged necessarily overlaps and is therefore contradictory.

11   Given the consignee/consignor type of relationship used by the Marana Stockyards and its

12   sellers, Nichols asserts the only construction that makes sense is that the owner of the stolen

13   cattle would have been Nichols himself or another unidentified third party.  Objection, p. 2.

14           However, as discussed by the magistrate judge:

15           Mr. Parsons explained that the seller is paid immediately irrespective of how long it
         takes the buyer to remit payment. Hr'g Tr. 2/7/2020 at 40:19–41:8. Marana
16         Stockyards has a custodial account in which it deposits money from a credit line, and
         when an animal is sold, the stockyard immediately writes a check to the seller and
17         provides it to them in person, if they are present, or via mail.  *Id*. at 40:19–41:8,
         54:19–55:2, 55:23–56:22, 57:20–58:7.  As a result, if a buyer fails to pay, Marana
18         Stockyards retains ownership of the cattle. *Id*. at 44:6–11, 57:20–59:1.  Mr. Parsons
         testified that the paperwork that accompanies a sale includes invoices and brand
19         papers which contain the buyer's name and information, as well as the animal's
         information. *Id*. at 58:18–59:1.  Mr. Parsons further testified that this paperwork also
20         states that Marana Stockyards retains ownership until the cow is paid for.  *Id*.

21   R&R, pp. 6-7.  The Court agrees with the magistrate judge that Nichols' assertion that

22   Marana Stockyards did not acquire title to the cattle is without merit. *Id*. at 7.  The Court

23   overrules this objection.

24           Accordingly, after an independent review, IT IS ORDERED:

25           1.      The Report and Recommendation (Doc. 114) is ADOPTED.

26           2.      The Motion to Dismiss Count 10 for Lack of Federal Jurisdiction (Doc. 70) is

27   DENIED.

28           3.      The Motion to Dismiss Count 10 – Void for Vagueness (Doc. 71) is DENIED.

- 6 -

1          4.      The Motion to Dismiss Count 10 of the Indictment for Failure to State an

2  Offense (Doc. 72) is DENIED.

3          DATED this 14th day of August, 2020.

4

5

6                             Cindy K. Jorgenson

7                           United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28